UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FILOGONIO BACILIO LORENZO                       :

                                                         :   OPINION & ORDER

                Plaintiff,

                                                         :   23 Civ. 48 (MKV) (GWG)

   -v.-

                                                         :

DEE MARK INC. et al.,                           :

                                                         :

                Defendants.
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Filogonio Bacilio Lorenzo, on behalf of himself and a putative class and proposed collective, has sued defendants Dee Mark Inc., Dee Jing Inc., Limupoke Inc., Penkae Poolsuk, and Chatchai Huadwattana for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), New York State Labor Law ("NYLL") wage-and-hour provisions, and the Internal Revenue Code, 26 U.S.C. § 7434, as well as for breach of contract. See Complaint, filed January 4, 2023 (Docket # 1) ("Comp"), ¶¶ 1-4. Before the Court is plaintiff's motion for conditional approval of the collective action under the FLSA pursuant to 29 U.S.C. § 216(b).[1] For the reasons stated below, plaintiff's motion is granted in part and denied in part.

---

[1] See Motion to Certify Class, filed June 29, 2023 (Docket # 18) ("Mot."); Memorandum of Law in Support, filed June 29, 2023 (Docket # 19) ("Mem."); Declaration in Support of Motion, filed June 29, 2023 (Docket # 20) ("Lee Decl."); Memorandum of Law in Opposition, filed July 19, 2023 (Docket # 21) ("Opp."); Declaration of Chatchai Huadwattana, filed July 19, 2023 (Docket # 22) ("Huadwattana Decl."); Declaration of Pornchanok Makmuang, filed July 19, 2023 (Docket #23) ("Makmuang Decl."); Memorandum of Law in Reply, filed Aug. 11, 2023 (Docket # 28) ("Reply"); Affirmation in Support, filed Aug. 11, 2023 (Docket # 29) ("Lee Reply Decl.").

I.  BACKGROUND

    A.  Allegations in the Complaint

Plaintiff was employed as a delivery person by defendant Dee Mark Inc., d/b/a Aroy Dee Thai. Comp. ¶ 31.  Plaintiff alleges that defendants collectively operate three restaurants: (1) Aroy Dee Thai (operated by Dee Mark Inc.); (2) Kuu Ramen FiDi (operated by Dee Jing Inc.); and (3) Kuu Ramen UES (operated by Limupoke Inc.).  Comp. ¶¶ 9, 11; NYS Liquor Authority Mapping Project, annexed as Exhibit D to Lee Reply Decl. (Docket # 29-1) ("LAMP").  Two of the restaurants — Aroy Dee Thai and Kuu Ramen FiDi — operate in the same location and share a common kitchen and storage area.  Comp. ¶ 10.  The complaint alleges that employees of all three restaurants were sent between the locations as needed.  Id.  Defendant Poolsuk is "the principal and executive officer" of all three corporate entities.  Id. ¶ 12.  Defendant Huadwattana is "a co-founder and principal" of all three corporate entities.  Id. ¶ 13.  Both Poolsuk and Huadwattana are responsible for hiring, firing, and supervising employees, as well as handling compensation.  Id. ¶¶ 12-13.  Additionally, there is a centralized Human Resources department.  Id. ¶ 10.

During his employment, plaintiff was compensated weekly with a paycheck.  Id. ¶ 44. The complaint alleges that over the course of his employment, plaintiff was: (1) paid "at rates below the New York State tip credit minimum wage and an improper overtime rate due to an invalid tip credit," id. ¶ 35; (2) required to perform non-tipped related activities, such as cooking and dishwashing, during more than twenty percent of his working time, id. ¶ 37; (3) required to perform catering services in which defendants charged a surcharge that was not disbursed to plaintiff as required by the NYLL, id. ¶¶ 38-39; (4) required to share his tips with non-tipped employees, id. ¶ 41; and (5) required to buy and maintain his own tools, such as bicycles,

helmets, and bags, totaling approximately forty dollars per month, id. ¶ 42.

Plaintiff filed this suit on January 4, 2023. See Comp. He now moves for approval of an FLSA collective and a proposed notification to putative members of the collective pursuant to section 216(b). See Mot. Plaintiff's proposed FLSA collective consists of persons who "are or were employed by DEE MARK INC., DEE JING INC., or LIMUPOKE INC., as a [sic] front of the house non-exempt tipped employees, including delivery persons, servers, runners, bussers, and bartenders at any time between January 4, 2017 and the present." Notice of Pendency, annexed as Exhibit A to Lee Decl. (Docket # 20-1) ("Proposed Not."), at 1.

B. Plaintiff's Declaration

Plaintiff has provided his own sworn declaration in support of this motion. See Declaration of Filogonio Bacilio Lorenzo, annexed as Exhibit C to Lee Decl. (Docket # 20-3) ("Lorenzo Decl."). Lorenzo states that he was hired as a delivery person for defendant Aroy Dee Thai in July 2021 and worked approximately 41.5 hours per week until July 2022. Lorenzo Decl. ¶¶ 1, 7. Lorenzo performed work both for Aroy Dee Thai and Kuu Ramen FiDi, the restaurants that share an address. Id. ¶ 2. Over the course of his employment, defendant Penkae Poolsuk "operate[d] the totality of the [r]esturants," including Aroy Dee Thai, Kuu Ramen FiDi, and Kuu Ramen UES. Id. ¶ 4. Lorenzo identifies several other delivery persons (Victor, Felipe, Leo, and Nacho) who he asserts were all subject to the "same wage and hour policies." Id. ¶ 6.

Lorenzo describes a number of FLSA violations in his declaration, asserting that (1) he and his co-workers were required to perform "excessive amounts of sidework," which reduced the amount of tips they would make throughout the day, id. ¶ 12; (2) that he and his co-workers were required to share their tips with non-tipped employees, specifically a cook named Victor, id. ¶ 15; (3) that "Manager Kate" would take his and his co-workers' tips, id. ¶ 16; (4) that he

3

and his co-workers were "required to buy and provide [their] own tools and working materials, such as bicycles, helmets, bags, flashlights, protective vests, and tools to repair [their] bicycle[s]," id. ¶¶ 18-19; and (5) that he and his co-workers "did not receive the proper overtime compensation, despite working over forty hours per workweek due to an invalid tip credit," id. ¶ 17. Lorenzo states somewhat vaguely that speaking to his coworkers resulted in his believing that "it was common knowledge that Defendants engaged in the practices described in this statement." Id. ¶ 6. Other paragraphs of his declaration are more direct in indicating that Lorenzo had personal knowledge that workers other than himself were the victims of the alleged FLSA violations. See id. ¶ 11 (Lorenzo "observed [his] co-workers also spending more than two hours" doing non-tipped work); id. ¶ 12 (complaints of other co-workers regarding "excessive amounts of sidework" to the exclusion of delivery work); id. ¶ 16 (co-workers complained to Lorenzo that kitchen employees received a portion of tips); id. ¶ 19 (co-workers complained about spending money on bike maintenance).

C. Defendants' Declarations

Defendants have provided two declarations from Makmuang and defendant Huadwattana. See Makmuang Decl.; Huadwattana Decl. Makmuang is the owner of Dee Mark Inc., d/b/a Aroy Dee Thai. Makmuang Decl. ¶ 1. Makmuang states that plaintiff Lorenzo was employed by Aroy Dee Thai, and that Aroy Dee Thai is not affiliated with either of the Kuu Ramen corporate entities (Dee Jing Inc. and Limupoke Inc.). Id. ¶ 3. Makmuang also states that plaintiff Lorenzo "never worked for either of the other Defendants' restaurants," and that "Aroy Dee Thai has its own staff" and "does not share employees, services, records, or equipment." Id. ¶¶ 4, 5, 7.

Defendant Huadwattana is the owner of Dee Jing Inc. and Limupoke Inc., the corporate entities operating the Kuu Ramen locations. Huadwattana Decl. ¶ 1. Huadwattana indicates that

4

Lorenzo "never worked for either [of the Kuu Ramen locations] in any capacity," and similarly that the restaurants do not share any employees or resources.  Id. ¶¶ 4, 9.

II.  GOVERNING LAW

29 U.S.C. § 216(b) of the FLSA provides, in pertinent part:

An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

While the statute does not prescribe any procedures for approval of collective actions, section 216(b) has long been construed to grant authority to a district court to permit notices to be sent to potential plaintiffs informing them of the option to join the suit.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted).  "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though [the] FLSA does not contain a certification requirement."  Wood v. Mike Bloomberg 2020, Inc., 484 F. Supp. 3d 151, 156 (S.D.N.Y. 2020) (citations omitted).  The act of "certifying" a collective action, however, means only that this Court has "exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice" to potential members of the collective.  Myers v. The Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) (internal quotation marks and citations omitted).  The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169, 174).

5

"The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Accordingly, "no showing of numerosity, typicality, commonality and representativeness need be made." Id. (citations omitted). Furthermore, "'[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23,' in a collective action, 'only plaintiffs who affirmatively opt in can benefit from the judgment.'" Wood, 484 F. Supp. 3d at 156 (citations omitted).

The Second Circuit has endorsed a "two-step process" for treatment of a proposed collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. [Myers,] 624 F.[3]d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. Id.

Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2016). Thus, the threshold issue in deciding whether to authorize notice in an FLSA action is whether plaintiffs have demonstrated that there are other employees who are "similarly situated."

As a result, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citations omitted); accord Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012). Therefore, a court "should not weigh the merits of the underlying claims" at the conditional approval stage, and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). Plaintiffs

need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  Nonetheless, "the factual showing, even if modest, must still be based on some substance." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).

Once employees have opted in and after discovery is complete, "courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." Wood, 484 F. Supp. 3d at 157 (quoting Indergit v. Rite Aid Corp., 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010)).  If the court determines at that stage that the opt-in plaintiffs are not similarly situated to the named plaintiff, then "[t]he action may be 'de-certified' . . . and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555 (citations omitted).

III.  DISCUSSION

Plaintiff requests that we approve a notice of the pendency of this action to be sent to "all front of the house non-exempt tipped employees, including delivery persons, servers, runners, bussers, and bartenders, employed by Defendants within the last six years." Mem. at 1. Defendants respond that plaintiff has failed to show that defendants operate a single integrated enterprise, Opp. at 5, and that plaintiff's collective action violations are factually deficient, id. at 3.  In addition to approval of the collective action, plaintiff requests equitable tolling on the statute of limitations on behalf of the collective until plaintiff "is able to send notice to potential opt-in plaintiffs." Mem. at 16.

We address first whether authorization of any notice is appropriate in this case and then

address the request for equitable tolling.

    A.  <u>Whether a Notice Should be Authorized</u>

        1.  <u>Single Integrated Enterprise</u>

The complaint alleges that all three restaurants — Aroy Dee Thai, Kuu Ramen FiDi, and Kuu Ramen UES — operate as a "single integrated enterprise under the common control of the Corporate and Individual Defendants." Comp. ¶ 10; <u>see</u> <u>also</u> Mem. at 2. Defendants argue that "Plaintiffs Have Not Established that Defendants Operate as a Single Integrated Enterprise," Opp. at 5, and provide evidentiary material that purportedly contradicts the allegations in the complaint, <u>see</u>, <u>e.g.</u>, <u>id.</u> at 6. As noted, Huadwattana, the owner of the Kuu Ramen locations, states that "Lorenzo[] never worked for either [of the Kuu Ramen] restaurants in any capacity," Huadwattana Decl. ¶ 4, and that the Kuu Ramen locations are not "affiliated in any way with" Aroy Dee Thai, <u>id.</u> ¶ 3. Makmuang, the owner of Aroy Dee Thai, states that Lorenzo was employed by Aroy Dee Thai, Makmuang Decl. ¶ 4, but that Aroy Dee Thai is "not affiliated in any way" with the Kuu Ramen restaurants, <u>id.</u> ¶ 3. In addition to the affidavits, defendants submit employee lists from the three defendant restaurants purportedly showing that there is no overlap in the workforce. Opp. at 6; Kuu Ramen FiDi Employee List, annexed as Exhibit A to Huadwattana Decl. (Docket # 22-1); Kuu Ramen UES Employee List, annexed as Exhibit B to Huadwattana Decl. (Docket # 22-2); Aroy Dee Thai Employee List, annexed as Exhibit A to Makmuang Decl. (Docket # 23-1).

The problem with defendants' argument is that in "evaluating whether court-authorized notice is appropriate, 'the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.'" <u>Diaz v. S & H Bondi's Dep't Store</u>, 2012 WL 137460, at *3 (S.D.N.Y. Jan. 18, 2012) (quoting <u>Davis v. Abercrombie & Fitch Co.</u>, 2008 WL

4702840, at *9 (S.D.N.Y. Oct. 23, 2008)). "[I]f the plaintiff's allegations are sufficient on their face to support [conditional approval], a defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions." Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013). Here, defendants make no argument that the allegations in the complaint are legally insufficient to allege that the defendants are a single integrated enterprise. Instead, they present "conflicting factual assertions," id., which are impermissible at this stage. Even if defendants sought to attack the allegations in the complaint without resorting to evidentiary matter, we would reject the attempt to have this Court decide the merits of this aspect of the complaint given that all that is before us is a motion to approve a collective action. As case law reflects, "consideration of the merits is absolutely inappropriate at the conditional approval stage." Wood, 484 F. Supp. 3d at 158 (internal quotation marks omitted); accord Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 527 (S.D.N.Y. 2015) (arguments that "attack the merits of the case, raise factual disputes, or question the credibility of Plaintiffs' declarations . . . are not issues that can be addressed at this juncture") (punctuation omitted). Accordingly, we reject defendants' argument that their contentions as to the defendants not being a single integrated enterprise would bar the motion for conditional approval of a collective action.

    2. Similarly Situated

Defendants argue that plaintiff fails to satisfy the burden of showing that employees are similarly situated. Opp. at 3. As was explained in Contrera v. Langer, 278 F. Supp. 3d 702, 716 (S.D.N.Y. 2017) there are

> two broad methods by which a plaintiff may show he or she is "similarly situated" to the group of employees to whom he or she seeks to send notice of a lawsuit. One is a "top-down" method of proof, in which a plaintiff provides

9

> evidence from a central office or from management levels of an employer showing that the employer had a policy or practice of treating all employees in the class similarly with respect to the allegedly illegal labor law practice . . . . The other form of proof may be called "bottom-up" — that is, where plaintiffs and sometimes other employees provide affidavits conveying their own experience with the employer, or recount conversations with other employees, and then seek to draw an inference that an illegal policy or practice exists that covered a group of employees broader than the plaintiff or the other employees who provided the affidavits.

Here, plaintiff provides "bottom-up" arguments in the form of his own affidavit, in which plaintiff recounts his experience and conversations with other employees. See Lorenzo Decl. While plaintiff has submitted only an affidavit from himself, a single affidavit — "containing no more than some combination of descriptions of personal experience, observations of other employees sharing that experience, and references to conversations with those employees" — has "repeatedly" been held to be an appropriate basis on which to grant approval of a collective action. Ramirez v. Liberty One Group LLC, 2023 WL 4541129, at *3 (S.D.N.Y. July 14, 2023) (collecting cases); accord Hernandez v. Bare Burger Dio Inc., 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases); Fernandez v. Sharp Management Corp., 2016 WL 5940918, at *3 (S.D.N.Y. Oct. 13, 2016) (collecting cases).

Plaintiff proposes that the collective encompass "all non-exempt tipped employees, including delivery persons, servers, runners, bussers, and bartenders among others." Comp. ¶ 17. Defendants argue that either the collective action should be rejected entirely, Opp. at 4-5, or that it should be limited to delivery workers, id. at 7-8.

As to delivery workers, plaintiff's declaration states that he had discussions with other delivery persons, including Victor, Felipe, Leo, and Nacho. Lorenzo Decl. ¶ 6. "While working, and [] grabbing drinks," plaintiff and the other delivery employees "would complain about the excessive amounts of sidework" they were required to perform (thereby depriving them of

10

receiving a higher amount of delivery tips), would "complain[] and discuss[] how it was unfair that kitchen employees . . . regularly received a portion of [their] tips," and "would discuss and complain how it was unfair [d]efendants made [them] spend [their] money on bike maintenance." Id. ¶¶ 12, 16, 19. These allegations easily allow the inference that the delivery employees were similarly situated with respect to FLSA violations. See Ramirez, 2023 WL 4541129, at *8; see also Gomez v. Kitchenette 123 Inc., 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (granting conditional approval of collective action as to delivery employees based on a lone affidavit that references "a list of nine individuals (listed only by first name) with whom [plaintiff] state[d] he discussed wage and hour violations").

As it relates to non-delivery employees, however, the declaration stands on a different footing. While Lorenzo repeatedly states that he spoke to the delivery employees whom he names, Lorenzo Decl. ¶¶ 6, 12, 15 19, he does not give the name of a single non-delivery person and never says that he spoke to any such non-delivery personnel. More to the point, he provides no allegations showing that he has personal knowledge as to how non-delivery personnel were treated. Instead, any allegations regarding other employees are conclusory, without reference to any basis of knowledge or the particular category of employee. See, e.g., id. ¶ 4 ("Defendants provide the same terms of employment to employees at all locations."); id. ¶ 6 ("Based on my work experience and my personal observations and conversations with co-workers, I know that all employees of Defendants were subject to the same wage and hour policies."); id. ¶ 11 ("I observed my co-workers also spending more than two hours a shift preparing food; dishwashing; doing porter work; taking out garbage; putting away incoming deliveries; etc."); id. ¶ 15 ("Other employees employed by Defendants were also required to share their tips with non-tipped employees."). Such "general" and "vague" allegations that "do[] not mention a single specific

11

conversation that [plaintiff] had" with the non-delivery employees cannot satisfy plaintiff's burden. Yang v. Asia Market Corp., 2018 WL 2227607, at *2 (S.D.N.Y. Apr. 3, 2018). Case law recognizes that "where a plaintiff fails to provide sufficient details that the proffered unlawful policy or practice also affected employees in different job functions or roles, courts will limit the collective to only those job functions for which the plaintiff bore his or her evidentiary burden." Ramirez, 2023 WL 4541129, at *8. Thus, the Court will not expand the FLSA collective beyond the delivery workers. See, e.g., Gomez, 2017 WL 4326071, at *5 ("[A]lthough the Court finds that there are sufficient details to support Plaintiff's contention that delivery persons were subject to a common policy or plan, the assertions in the affidavit that go beyond delivery persons are insufficiently detailed to justify certification of a broader collective."); Leonardo v. ASC, Inc., 2018 WL 5981996, at *3 (S.D.N.Y. Nov. 14, 2018) (denying conditional approval for "all non-managerial employees" because "[p]laintiff's affidavit offers no specific conversations, names, or other details to show that employees other than kitchen staff were part of a common policy") (emphasis in original); Campos v. Lenmar Restaurant Inc., 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) ("In contrast to bussers and servers, for whom Plaintiff can point to specific details from his own experience or from conversations with specifically named employees, Plaintiff is unable to provide any non-conclusory allegations about the conditions that other non-managerial employees experienced.").

Lorenzo argues that the proposed collective should encompass both delivery and non-delivery employees since "[t]he key question for the similarly situated inquiry is not whether plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." Reply at 10 (quoting Chui v. American Yuexianggui of LI LLC, 2020 WL

3618892, at *5 (S.D.N.Y. July 2, 2020) (quoting Knox v. John Varvatos Enterprises Inc., 282 F. Supp. 3d 644, 656 (S.D.N.Y. 2017)).  However, as discussed above, Lorenzo must state more than mere conclusory allegations.  For example, in Lorenzo's cited case, Chui, the court limited the proposed collective to only certain job titles for which specific evidence had been provided. 2020 WL 3618892, at *7-8.  Lorenzo, however, fails to provide any factual allegations referencing personal knowledge as to the employer's practices with regard to non-delivery employees.

For similar reasons, Lorenzo has not met his burden of showing that the identified practices occurred at all three of the defendants' restaurants.  Lorenzo and all four of his co-workers worked exclusively at two of the three restaurants: Aroy Dee Thai and Kuu Ramen FiDi. See Lorenzo Decl. ¶ 6.  There is absolutely no evidentiary matter submitted that shows that the practices occurred at the third location, Kuu Ramen UES, which is situated miles away from the other two locations.  Plaintiff refers on several occasions to improper practices by "Manager Kate," see id. ¶¶ 14, 16, but never provides any statements from personal knowledge that "Manager Kate" operated at the Kuu Ramen UES location.  We thus follow cases that have limited collective actions to only those locations operated by an employer for which sufficient evidentiary matter had been supplied as to practices at those locations.  See, e.g., Santiago v. Tequila Gastropub LLC, 2017 WL 1283890, at *1-2 (S.D.N.Y. Apr. 5, 2017); Jing Fang Luo v. Panarium Kissena Inc., 2016 WL 11263668, at *9 (E.D.N.Y. Nov. 23, 2016), adopted by 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017); Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013); see generally Ramirez, 2023 WL 4541129, at *9 (limiting collective to the "one location of which [plaintiff] specifically alleges firsthand knowledge" where plaintiff failed to allege with "any specificity", inter alia, "how often or when [plaintiff

13

was] substituted there; how [the locations] were managed in relation to the other locations; how employees were hired or assigned to them; . . . or any other details that would bolster her argument that the alleged time-shaving extended beyond the" location where she worked).

In sum, Lorenzo has carried his "modest" burden of demonstrating he is similarly situated to other delivery employees who worked at Aroy Dee Thai and Kuu Ramen FiDi. He has not done so, however, for any other workers, including non-delivery "non-exempt tipped employees." Accordingly, notice should be distributed only to delivery employees who worked at Aroy Dee Thai and Kuu Ramen FiDi, but not to other employees. See Campos, 2019 WL 6210814, at *4 (limiting notice to "bussers and servers" but not other "non-exempt employees"); She Jian Guo v. Tommy's Sushi Inc., 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (limiting the proposed collective to delivery employees due to the plaintiffs' "vague, conclusory, and unsupported assertions").

### B. Equitable Tolling

The FLSA provides for a statute of limitations period of at most three years. See 29 U.S.C. § 255(a). Plaintiff asks the Court to equitably toll the statute of limitations "until such time that Plaintiff is able to send notice to potential opt-in plaintiffs." Mem. at 16. Defendants oppose this request. Opp. at 8-9.

As the Supreme Court has stated, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Here, plaintiff "provide[s] no facts or even arguments regarding existing or potential opt-in plaintiffs that reflect that these employees of the defendants have been pursuing their rights diligently." Contrera, 278 F. Supp. 3d at 723 (internal quotation marks omitted). Thus, "we

14

have no basis for making a ruling at this time that any current or future opt-in employees' claims must be equitably tolled given that there has been no showing that they have met the 'diligence' prong of the equitable tolling doctrine." Id. at 725; accord Perez Perez v. Escobar Construction, Inc., 540 F. Supp. 3d 395, 409 (S.D.N.Y. 2021). We reject plaintiff's invitation to equitably toll the statute simply to account for the time period spent by the Court in deciding the motion for conditional approval for the reasons stated in Contrera, 278 F. Supp. 3d at 723-27. Accordingly, Lorenzo's request for equitable tolling is denied. Should plaintiffs who join the collective action have time-barred claims, they may present arguments for equitable tolling at the time they join. See Perez Perez, 540 F. Supp. 3d at 408-09.

C. Proposed Order

Lorenzo has requested the Court order several measures in addition to collective action approval, including approval of a notice and consent form; the production of "names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses [,] all known telephone numbers," and Social Security Numbers[2] of the relevant employees; and "the posting of the notice, along with the consent forms, in [d]efendants' places of business where [the relevant employees] are employed, by Plaintiff's counsel at any time during regular business hours." Proposed Order, annexed as Exhibit 1 to Mot. (Docket # 18-1) ("Proposed Order"), at 2; Mem. at 1-2. Additionally, Lorenzo requests that notice be sent to workers who were employed

---

[2] It is unclear under what conditions plaintiff is seeking Social Security Numbers in light of the discrepancy between Lorenzo's Proposed Order, see Proposed Order, annexed as Exhibit 1 to Mot. (Docket # 18-1) ("Proposed Order"), at 2, and his memorandum of law, see Mem. at 1-2. In the Proposed Order, Lorenzo states that Social Security Numbers are required "[t]o the extent there are notice mailings returned as undeliverable." Proposed Order at 2. In his memorandum of law, Lorenzo does not make this request conditional on the return of the notice mailing. Mem. at 1-2.

"by Defendants on or after the date that is 6 years before the filing of the Complaint." Proposed Order at 1; Mem. at 1.

Defendants do not address any of these issues in their memorandum of law. Accordingly, we assume that the parties can reach agreement as to the form of the notice. If not, they are free to bring any disagreements to the Court's attention.

Conclusion

For the foregoing reasons, plaintiff's motion for approval of a collective action (Docket # 18) is granted in part and denied in part as set forth herein.

SO ORDERED.

Dated:  November 14, 2023
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge