USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FILOGONIO BACILIO LORENZO, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

-against-

DEE MARK INC., *doing business as* Aroy Dee Thai, et al.,

Defendants.

---

1:23-cv-48 (MKV)

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Filogonio Bacilio Lorenzo, ("Plaintiff"), a former food delivery worker at a Manhattan restaurant called Aroy Dee Thai, brings this action against Defendants Dee Mark Inc., d/b/a Aroy Dee Thai ("Aroy Dee Thai"), Dee Jing Inc., d/b/a Kuu Ramen ("Kuu Ramen Fidi"), Limupoke Inc., d/b/a Kuu Ramen ("Kuu Ramen UES"), Penkae Poolsuk, Chatchai Huadwattana, Pornchanok Makmuang ("P. Makmuang"), and Kanruthai Makmuang ("K. Makmuang") (collectively "Defendants") asserting claims under the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York Labor Law, §§ 190 *et seq.* and 650 *et seq.* ("NYLL"), and 26 U.S.C. § 7434(a) for allegedly filing with the Internal Revenue Service ("IRS") fraudulent information returns with respect to payments made to him. [ECF No. 82 ("Second Amended Complaint" or "Second Am. Compl.")]. Before the Court are cross-motions for summary judgment as to liability only. Plaintiff requests that damages be calculated after resolution of the motions for summary judgment.

For the reasons contained herein, Plaintiff's motion is granted in part and denied in part, and Defendants' motion is granted in part and denied in part.

1

**FACTUAL BACKGROUND**[1]

The following facts are undisputed except as noted. Plaintiff sues three corporate Defendants (the "Corporate Defendants") that operate three restaurants: (1) Dee Mark Inc., operating Aroy Dee Thai; (2) Dee Jing Inc., operating Kuu Ramen Fidi; and (3) Limupoke Inc., operating Kuu Ramen UES. Defs. Rp. ¶¶ 1-3. At all relevant times, these three Corporate Defendants were enterprises engaged in commerce within the meaning of the FLSA and NYLL and had gross annual revenues in excess of $500,000. Defs. Rp. ¶¶ 4-5. Aroy Dee Thai and Kuu Ramen Fidi are both located at 20 John Street, New York, New York, and have a shared basement hatch. Defs. Rp. ¶ 9. The three Corporate Defendants utilized the same payroll company, bank, banker, and outside accountant. Defs. Rp. ¶¶ 10-12.

Plaintiff was employed as a delivery person by Aroy Dee Thai from July 21, 2021 to June 30, 2022. Pl. Rp. ¶¶ 3, 5, 22. A co-worker named Kelly paid Plaintiff and directed him on his duties on a daily basis. Pl. Rp. ¶ 8. Another individual named "Leo" also supervised Plaintiff on a daily basis. Pl. Rp. ¶ 9. In his Local Rule 56.1 Counter-Statement of Material Facts, Plaintiff does not dispute that Kelly and Leo supervised him, but states that P. Makmuang and K. Makmuang also had supervisory control over him. Pl. Rp. ¶¶ 8, 9.

Plaintiff was compensated weekly with a paycheck. Pl. Rp. ¶ 13. At all times, Plaintiff's base hourly wage was $15.00 and a tip credit was deducted from the base wage he received. Pl. Rp. ¶¶ 23, 24; Pl. 56.1, Ex. 8 ("Pl. Employment Records") [ECF No. 90-8].[2] Specifically, Plaintiff's initial hourly rate after the tip credit was $11.65, and it increased to $12.65 on October

---

[1] The factual background is based on Plaintiff's Local Rule 56.1 Statement of Material Facts ("Pl. 56.1") [ECF No. 90]; Defendant's Local Rule 56.1 Counter-Statement of Materials Facts ("Defs. Rp.") [ECF No. 92]; Defendant's Local Rule 56.1. Statement of Material Facts ("Defs. 56.1") [ECF No. 86-1]; and Plaintiff's Local Rule 56.1 Counter-Statement of Material Facts ("Pl. Rp.") [ECF No. 94-1].

[2] The documents in Exhibit 8 to Plaintiff's Local Rule 56.1 Statement of Materials Facts reflect all the employment records for Plaintiff that Defendants have produced in this case.

25, 2021 and remained at that rate until the end of his employment.  Pl. Rp. ¶ 24; *see* Pl. 56.1, Ex. 8, Pl. Employment Records at 30 (documenting that Plaintiff's hourly wage increased to 12.65 on October 25, 2021).[3]  During his roughly 11 months of employment, Plaintiff worked a total of 10.42 hours of overtime and was paid, pursuant to a tip credit, an hourly rate of $20.15 for each of those hours.  Pl. Rp. ¶¶ 26-27.  There is no dispute that despite paying Plaintiff at a tip credit rate, Defendants never provided Plaintiff with any tip credit notice and did not inform him that the tip credit taken may not exceed the value of the tips he actually received.  Defs. Rp. ¶¶ 55, 56.  It is similarly undisputed that Plaintiff was also never provided wage notices that complied with NYLL § 195(1).  Defs. Rp. ¶ 55.  Further, Defendants provided Plaintiff with wage statements that did not itemize the specific amount of tip credit claimed.[4]  Defs. Rp. ¶ 57; *see also* Pl. 56.1, Ex. 8, Pl. Employment Records at 1-93.

Aroy Dee Thai also used its delivery workers to complete catering orders.  Defs. Rp. ¶ 64.  For these orders, the restaurant assessed a 15% service charge, 10% of which went to the delivery person and 5% went to the kitchen staff.  Defs. Rp. ¶ 64.  K. Makmuang testified that when customers called in for a catering order at Aroy Dee Thai, the restaurant "inform[ed] the customer that" there is a 15% "service fee."  Pl. 56.1, Ex. 7 ("K. Makmuang Dep.") [ECF No. 90-7] at 33:9-36:2.

During his employment, Plaintiff was paid via his payroll checks only a portion of the tips that Defendants' payroll records reflect Plaintiff earned.  Defs. Rp. ¶ 60.  The remaining portion

---

[3] Defendants erroneously claim, *see* Pl. Rp. ¶ 24, that Plaintiff's pay changed on September 12, 2021 but their citation to page 17 of Plaintiff's deposition does not support this contention. [*See* ECF No. 84-2 ("Plaintiff Dep.") at 17].  Further, Defendants appear to be relying on a different employee's pay stub to support their contention that Plaintiff's rate changed on that date.  *See* Pl. Employee Records at 17 (reflecting a pay stub for employee Felipe Genis Hernandez).

[4] Defendants do not dispute this claim other than stating that the "wage statements accurately reflected payments received" and that "no harm resulted from any lack of itemization[.]"  Defs. Rp. ¶ 57.

of the tips were supposed to be paid by a separate check.  Defs. Rp. ¶ 60. Defendants have not produced evidence of these separate checks.  Defs. Rp. ¶ 61.

At all relevant times, P. Makmuang was the 100% owner of Aroy Dee Thai.  Defs. Rp. ¶ 6. With respect to Aroy Dee Thai, P. Makmuang had the power to hire and fire employees, make decisions regarding employee pay, and had access to employee records.  Defs. Rp. ¶¶ 37, 40, 41. P. Makmuang delegated payroll and bookkeeping for Aroy Dee Thai to her sister, K. Makmuang. Defs. Rp. ¶¶ 13, 42.  Defendants concede P. Makmuang delegated operational control of Aroy Dee Thai to K. Makmuang.  Defs. Rp. ¶ 36.  P. Makmuang testified that she was not involved operationally with Aroy Dee Thai, but rather K. Makmuang handled his investment in Aroy Dee Thai.  Pl. 56.1, Ex. 5 ("P. Makmuang Dep.") at 41:23-42:14 [ECF No. 90-5].  Defendants dispute that P. Makmuang directly supervised Plaintiff.  Defs. Rp. ¶ 38.

At all relevant times, Defendant K. Makmuang oversaw the payroll, accounting and bookkeeping for all three Corporate Defendants.  Defs. Rp. ¶ 13.  If employees at Aroy Dee Thai had questions about pay they could go to K. Makmuang.  Defs. Rp. ¶ 14.

At all relevant times, Defendant Chatchai Huadwattana was the 100% owner of both Kuu Ramen Fidi and Kuu Ramen UES.  Defs. Rp. ¶¶ 7-8.  Defendants do not dispute that Chatchai Huadwattana had the power to hire and fire employees of the Corporate Defendants.  Defs. Rp. ¶ 21.  Defendants also do not dispute that Huadwattana exercised general and financial oversight over Aroy Dee Thai.  Defs. Rp. ¶¶ 20, 23.  Without reference to Aroy Dee Thai specifically, Defendants admit that Huadwattana had the power to set employee pay rates and had access to employee records.  Defs. Rp. ¶¶ 25, 26.[5]

---

[5] The Court notes that, despite Defendants' concessions, the factual basis in the record for Huadwattana's involvement with Aroy Dee Thai is thin.  Indeed, Plaintiff's cited evidence with respect to aspects of Huadwattana's involvement with all Corporate Defendants, Pl. 56.1 ¶¶ 22-27, pertains exclusively to his role with Kuu Ramen UES and Kuu Ramen Fidi, and not Aroy Dee Thai.  For example, Plaintiff relies on deposition testimony from

## PROCEDURAL HISTORY

This action was initiated by Plaintiff "on behalf of himself and others similarly situated" on January 4, 2023. [ECF No. 1]. Thereafter, Plaintiff moved for conditional certification of his collective action under the FLSA pursuant to 29 U.S.C. § 216(b). [ECF No. 18]. Magistrate Judge Gorenstein, to whom the motion was referred, [ECF No. 44], granted the motion but with a narrower scope than Plaintiff had requested. [ECF No. 50]. Despite certification, no additional plaintiffs have opted into the conditionally certified collective action and the deadline to join has long passed. [ECF No. 66]. Thereafter, Plaintiff filed a First and then a Second Amended Class and Collective Action Complaint, [ECF Nos. 72, 82], although, Plaintiff did not file a further motion for certification of a collective action or a class. Accordingly, this action involves individual claims only.

The Court is now in receipt of Plaintiff's motion for summary judgment [ECF No. 87], as well as Defendant's cross motion for summary judgment [ECF No. 84]. In support of his motion, Plaintiff filed a memorandum of law ("Pl. Mem.") [ECF No. 88], a Declaration of Plaintiff's counsel C.K. Lee ("Lee Decl.") [ECF No. 89], and his Local Rule 56.1 Statement of Material Facts [ECF No. 90] with accompanying exhibits. Defendants filed an opposition ("Defs. Opp'n") [ECF No. 91], and a Local Rule 56.1 Counter-Statement of Material Facts [ECF No. 92]. Plaintiff filed a reply ("Pl. Reply"). [ECF No. 95]. In support of their motion for summary judgment, Defendants filed a memorandum of law ("Defs. Mem.") [ECF No. 85], and a declaration from Defense counsel Adam C. Weiss with accompanying exhibits ("Weiss Decl.") [ECF No. 86]. Plaintiff filed an

---

Huadwattana for the proposition that he "exercised functional control over the business and financial operations of Corporate Defendants. Pl. 56.1 ¶ 23 (citing Pl. 56.1, Ex. 6 ("Huadwattana Dep.") at 13:11-24 [ECF No. 90-6]). However, Huadwattana's cited testimony pertains exclusively to her control over Kuu Ramen. *See* Huadwattana Dep. 10:13-14:3.

opposition ("Pl. Opp'n") [ECF No. 93], and a Local Rule 56.1 Counter-Statement of Material Facts [ECF No. 94-1].  Defendants filed a reply ("Defs. Reply") [ECF No. 96].

Plaintiff, while not explicit, appears to move only for partial summary judgment asking the Court to rule: (1) that certain Defendants are liable to Plaintiff under the FLSA and the NYLL for unpaid minimum and overtime wages due to Defendants' failure to meet the requirements for claiming a tip credit allowance under the FLSA and NYLL; (2) that Defendants are liable under the FLSA and NYLL for illegally retaining Plaintiff's tips and gratuities; (3) that Defendants are liable under the Wage Theft Prevention Act (the "WTPA"), 2010 N.Y. Sess. Laws 1446-58, an amendment to the NYLL, for statutory damages for their failure to provide proper wage notices and wage statements to Plaintiff; (4) that Plaintiff is entitled to liquidated damages under either the FLSA or NYLL; (5) that the three-year FLSA statute of limitations should be applied to Plaintiff's FLSA claims; and (6) that Aroy Dee Thai, K. Makmuang, P. Makmuang, and Chatchai Huadwattana are jointly and severally liable as employers under the FLSA and NYLL.[6]

Plaintiff notes that he will seek leave for supplemental briefing on the amount of damages and attorneys' fees owed should the Court grant his motion for summary judgment on liability.[7]

In their cross motion for summary judgment, Defendants seek dismissal of Plaintiff's case in its entirety and ask the Court to rule that Defendants are not liable because Plaintiff has been fully compensated and that Plaintiff lacks standing to sue on his notice-based claims.  Defendants further request that the Court find that Plaintiff's claim under 26 U.S.C. § 7434 fails as a matter of law.

---

[6] Plaintiff does not move for summary judgment against, let alone address, Corporate Defendants Dee Jing Inc. and Limupoke Inc., and individual Defendant Penkae Poolsuk in his motion for summary judgment.  Specifically, Plaintiff offers no argument or evidence that these unaddressed Defendants are Plaintiff's employers under the FLSA or NYLL.

[7] Plaintiff does not move for summary judgment on his claim under 26 U.S.C. § 7434(a).

**LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if it might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, a party must establish the absence or presence of a genuine issue of material fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

**DISCUSSION**

**I.    Cross Motions With Respect To Claims For Wage Violations**

Plaintiff argues he is entitled to summary judgment on his minimum wage and overtime claims because Defendants paid him pursuant to a tip credit without providing the requisite notice to claim such a credit under the FLSA and NYLL. Specifically, Plaintiff argues that, because Defendants failed to abide by the relevant requirements for taking a tip credit from his wages, (1)

7

Defendants violated the NYLL and paid him a wage below New York's minimum wage of $15.00;[8] and (2) that Defendants failed to pay him appropriate overtime wages under both the FLSA and NYLL. Pl. Mem. at 1 n.1, 3-11. Defendants sidestep the issue of their compliance with the notice requirements to claim a tip credit and instead seek summary judgment on these claims arguing that Plaintiff lacks standing for any notice-based violation because he received all wages owed, which they claim exceeded the relevant statutory minimums under both New York and federal law. Defs. Mem. at 6-8, 11-14; *see also* Defs. Opp'n at 7-13.

For the reasons discussed below and because there is no dispute that Defendants paid Plaintiff pursuant to a tip credit without providing him with the requisite notice, summary judgment should be granted on Plaintiff's minimum wage claims under the NYLL and overtime claims under both the FLSA and NYLL.

**A. Tip Credit Invalid for Lack of Notice**

Both the FLSA and NYLL permit an employer to pay a tipped worker a wage below the statutory minimum wage (or the overtime pay to which the employee is entitled), provided that the wage and tips together are at least equivalent to the minimum wage. *Shahriar v. Smith & Wollensky Restaurant Grp.*, 659 F.3d 234, 239–40 (2d Cir. 2011). This deduction is known as a "tip credit." *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). In other words, the minimum wage (and overtime pay) to which a worker is entitled, can be reduced by the amount of tip credit allowed under New York and federal law.

"Under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting

---

[8] Plaintiff acknowledges that, regardless of the validity of any tip credit claimed, his regular hourly wages always exceeded the federal statutory minimum thereby precluding any claims that his hourly wage, but not his overtime wages, violated the FLSA. *See* Pl. Mem. at 1 n.1.

the tip credit." *Inclan*, 95 F. Supp. 3d at 497 (citing 29 U.S.C. § 203(m)).  "The notice provision

is strictly construed and requires that an employer take affirmative steps to inform affected

employees of the employer's intent to claim the tip credit." *Mangahas v. Eight Oranges, Inc.*, 754

F. Supp. 3d 468, 495 (S.D.N.Y. 2024)  (citation omitted).  Moreover, while notice under the FLSA

need not be in writing, any notice, oral or otherwise, must include:

| | | |
|---|---|---|
| (i) | the amount of cash wage the employer is paying a tipped employee; |
| (ii) | the additional amount claimed by the employer as a tip credit; |
| (iii) | a statement that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee; |
| (iv) | a statement that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement; and |
| (v) | a statement that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions. |

*See* 29 U.S.C. § 203(m); *see also* Wage and Hour Division, U.S. Dep't of Labor, *Fact Sheet #15:*

*Tipped Employees Under the Fair Labor Standards Act (FLSA)* (Apr. 2018); *Mangahas*, 754 F.

Supp. 3d at 495.  "Because the employer has the ultimate burden to prove compliance with the tip

credit notice requirement, an employer opposing summary judgment on this issue must . . . adduce

definite competent evidence showing that [employees] were informed of the tip credit."

*Mangahas*, 754 F. Supp. 3d at 496 (quoting *Inclan*, 95 F. Supp. 3d at 498).

Similarly, under New York law, employers may pay less than the statutory minimum and

claim a tip credit *only* if certain notice requirements are met.  *See* 12 N.Y.C.R.R. § 146–2.2; *see*

*also Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 254 (S.D.N.Y. 2021).  To satisfy the NYLL's

notice requirement, at the start of employment and upon any change in the employee's hourly rates

of pay, the employer "shall give each employee written notice of the employee's regular hourly

pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic

minimum hourly rate, and the regular payday." N.Y.C.R.R. § 146-2.2(a)–(b). Thus, unlike the

FLSA, under New York law the notice must be in writing.  N.Y.C.R.R. § 146-2.2(a); *see also*

9

*Gamero v. Koodo Sushi Corp.,* 272 F. Supp. 3d 481, 501 (S.D.N.Y. 2017). The notice must be provided in English and the employee's primary language (so long as it is one of the languages in which the form notice is available on the New York Department of Labor's website). N.Y.C.R.R. § 146-2.2(a); *see also Gamero*, 272 F. Supp. 3d at 501; *Mangahas*, 754 F. Supp. 3d at 496. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. N.Y.C.R.R. § 146-2.2(a). Further, the employer must obtain a signed acknowledgement of the tip credit notice, which must be kept on file for six years. *Id.* As is the case under the FLSA, the employer bears the burden to establish compliance with the prerequisites to claim a tip credit. *See, e.g.*, *Chichinadze*, 517 F. Supp. 3d at 254; *Gamero*, 272 F. Supp. 2d at 501; *see also Feng Chen v. Patel*, No. 16-cv-1130 (AT) (SDA), 2019 WL 2763836, at *7 (S.D.N.Y. July 2, 2019) (noting the "NYLL has even more stringent notice requirements" than the FLSA).

In short, under both the FLSA and the NYLL, if the notice requirements are not met, an employer must pay the employee's full minimum wage (and any overtime due) as if there had not been a tip credit. *Gamero*, 272 F. Supp. 2d at 508; *see also Inclan*, 95 F. Supp. 3d at 497–98 (same). Numerous district courts recognize that this remains true under both the FLSA and NYLL even if the employee received tips that when factored in reflect that the employee earned the equivalent or even more than the minimum wage. *See, e.g.*, *Gamero,* 272 F. Supp. 3d at 508 ("[I]t is of no moment that [the tipped employee] often earned more than minimum wage once his tips were factored into his pay: An employer who does not comply with the NYLL's requirements for taking a tip credit is liable for the difference between the full minimum wage rate and what the employee was actually paid.") (citation omitted); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002); *Mangahas*, 754 F. Supp. 3d at 496 (discussing the same under

both the FLSA and NYLL); *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *6-7 (S.D.N.Y. Feb. 25, 2022)

Notably absent from the record before the Court is any evidence that Defendants ever provided Plaintiff with a tip credit notice that would satisfy the strict requirements of either the NYLL or FLSA. Indeed, Defendants concede they never provided written tip credit notices to Plaintiff and never informed him that the tip credit taken may not exceed the value of the tips he actually received. Defs. Rp. ¶¶ 55, 56. Moreover, Defendants come forward with no evidence that they ever provided an oral tip credit notice that would comply with the FLSA's requirements.

Accordingly, there is no genuine dispute as to whether Defendants satisfied the tip credit notice requirements—they plainly did not.[9]

## B. Defendants Violated New York Minimum Wage Laws

At all times during Plaintiff's employment, the applicable New York statutory minimum wage was $15.00 per hour, *see* NYLL §§ 652(1)(a)(i)–(ii), and the federal minimum wage was $7.25 per hour. *See* 29 U.S.C. § 206(a)(1).

As discussed above, Defendants were not entitled to claim a tip credit with respect to Plaintiff's wages under New York law. Here, it is undisputed that Defendants claimed a tip credit and paid Plaintiff a tip credit rate for both regular and overtime hours throughout his employment. Pl. 56.1 ¶ 53; Defs. 56.1 ¶¶ 23-24; *see also* Defs. Mem. at 6, 10. Specifically, Plaintiff's tip credit rate was $11.65 an hour (meaning a tip credit of $3.35 was applied against New York's $15.00 statutory minimum) from the beginning of his employment and increased to $12.65 an hour on

---

[9] Because the Court also concludes it is undisputed that Defendants improperly retained tips from Plaintiff, *see infra* Section II.A. and B.; *see also* Defs. Rp. ¶ 60, Defendants are not entitled to claim a tip credit for that independent reason. *See Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347 (ER), 2024 WL 1157074, at *12 (S.D.N.Y. Mar. 18, 2024) ("Both the NYLL and FLSA prohibit application of any tip credit if the employer does not permit employees to retain all tips.").

October 25, 2021 (meaning a tip credit of $2.35 was applied) and remained as such until the end of his employment.  Defs. 56.1 ¶¶ 23-24.  These rates are plainly below New York's applicable statutory minimum wage of $15.00.  *See* NYLL §§ 652(1)(a)(i)–(ii).

As a result, Plaintiff is entitled to summary judgment with respect to his NYLL claim for unpaid minimum wages and Defendants are required to pay Plaintiff the full New York state minimum wage without taking a tip credit. *See Mangahas*, 754 F. Supp. 3d at 497-98 (granting plaintiffs summary judgment where Defendants provided no admissible evidence that employees were properly informed of the tip credit); *Lopez v. MNAF Pizzeria, Inc.*, No. 18-CV-06033 (ALC), 2021 WL 1164336, at *10 (S.D.N.Y. Mar. 25, 2021) (same).[10]

Plaintiff's FLSA minimum wage claims for his regular hours fail irrespective of whether the tip credit was properly taken, and Defendants are entitled to summary judgment on that discrete issue.  It is undisputed, *see* Pl. Rp. ¶¶ 23-24, that Plaintiff's pay rate (without any consideration of tips) always exceeded the federal minimum.  *See Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *6 (S.D.N.Y. Feb. 25, 2022) (holding that "the FLSA minimum wage claims advanced by certain plaintiffs fail irrespective of whether the defendants' conduct with respect to the tip credits was proper" because it was undisputed the employees' salaries exceeded the federal minimum wage without the tip credit factored in).  Accordingly, summary judgment will be entered for defendants for any federal minimum wage claim.

---

[10] Given Defendants failed to provide the requisite tip credit notice, the Court need not wade into whether the tip credit was invalid for the additional reason that Plaintiff spent over 20% of his work time engaged in non-tipped work.  *See* 12 N.Y.C.R.R. § 146-2.9 ("if a tipped employee performs non-tipped work for (a) two hours or more, or (b) for more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day."); *see also Mendez v. Int'l Food House Inc.*, No. 13-CV-2651 JPO, 2014 WL 4276418, at *3 (S.D.N.Y. Aug. 28, 2014) (noting that "under the FLSA, tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work.") (citation omitted). Plaintiff did not raise this argument in his motion for summary judgment, *see* Pl. Mem., and instead only raised the argument in response to Defendants' motion.  *See* Pl. Opp'n at 3-4.  Further, whether Plaintiff spent more than 20% of time on nontipped work is a disputed material fact.  *See* Pl. Rp. ¶ 20.

## C.  Overtime Wage Violations

Plaintiff also claims that Defendants failed to pay him his proper overtime wages.  Under both the FLSA and the NYLL, an employer must pay an employee overtime wages of one and one-half times the regular rate of pay for each hour worked in excess of forty hours per work week. 29 U.S.C. § 207(a)(1) (FLSA); 12 N.Y.C.R.R. § 146–1.4 (NYLL).  Under both regimes, the overtime wage for tipped employees is calculated by multiplying the full regular rate of pay by one and one-half, and only afterwards subtracting any tip credit.  12 N.Y.C.R.R. § 146–1.4; 29 C.F.R. § 531.60 (noting that a "a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer"); 29 C.F.R. § 778.5 (noting that where, like here, a higher state minimum wage applies, the regular rate of pay under the FLSA "must be construed to mean the regular rate at which he is lawfully employed"); *see also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291-92 (S.D.N.Y. 2011).  Thus, while the federal minimum wage is less than New York's, Plaintiff's regular rate of pay under both the FLSA and NYLL, for purposes of determining his appropriate overtime wage is the New York minimum—*i.e.*, $15.00 per hour.  29 C.F.R. § 531.60; 29 C.F.R. § 778.5; *Copantitla*, 788 F. Supp. 2d at 291.

However, "if an employer fails to comply with the statutory tip credit requirements, then a tip credit cannot be taken against an employee's overtime wages."  *Tecocoatzi-Ortiz*, 2022 WL 596831, at *12.

Here, it is undisputed that during his approximately 11 months of employment, Plaintiff worked a total of 10.42 hours of overtime.  Pl. Rp. ¶ 26.  And it is also undisputed that for each of those hours he was paid an overtime rate, pursuant to a tip credit, of $20.15 per hour.  Pl. Rp. ¶ 27. However, as explained, Defendants failed to abide by the notice requirements under the FLSA and NYLL and therefore were not entitled to take a tip credit.  *See supra* Section I.A.  Accordingly,

13

Plaintiff's appropriate overtime wage under the FLSA and NYLL was $22.50, which reflects multiplying Plaintiff's regular rate of $15.00 by one and a half. *See Garcia v. Three Decker Rest., Ltd.*, No. 22 CIV. 01387 (CM), 2024 WL 1311897, at *9 (S.D.N.Y. Mar. 27, 2024) (granting Plaintiff's motion for summary judgment where Defendants were not entitled to take a tip credit against Plaintiff's minimum and overtime rates due to lack of proper notice). Plaintiff is entitled to recover on his overtime claims under both the FLSA and NYLL and Defendants are not entitled to claim a tip credit against his overtime rate.

**D.  Plaintiff Does Not Lack Standing To Claim Underpayment Based On Invalid Tip Credit**

Defendants' arguments that they are entitled to summary judgment on Plaintiff's minimum wage and overtime pay claims are unavailing. Defendants appear to raise two related arguments: (1) that NYLL § 198(1-d) provides that full payment of all wages due bars Plaintiff's claims concerning an invalid tip credit; and (2) that Plaintiff lacks standing to pursue this claim because he was paid in full and his wages plus tips exceeded the federal and state minimum wages. Defs. Mem. 7-11; Defs. Opp'n at 8-11.

As an initial matter, NYLL § 198(1-d) does not appear to provide an affirmative defense for failing to provide proper *tip credit notices* under the NYLL. Rather, Section 198(1-d) provides for an affirmative defense for failure to provide *wage statements* pursuant to NYLL § 195(3) when "the employer made complete and timely payment of all wages due." *See* NYLL § 198(1-d) ("[i]n any action . . . to recover damages for violation of [§ 195(3)] of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or articles nineteen or nineteen-A of this chapter to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article[.]"). A tip credit notice is separate and apart from a wage statement under NYLL § 195(3). Thus, this

affirmative defense, which would preclude statutory damages under NYLL § 195(3),[11] does not appear to provide an affirmative defense to a minimum wage (or overtime claim) whether or not based on an allegation claiming an invalid tip credit, whose requirements are distinct. *See* NYLL § 198(1-d). Indeed, Defendants cite no authority for their position.

In any event, both of Defendants' arguments—a complete payment defense under NYLL § 198(1-d) and Plaintiff's alleged lack of standing—rest on the faulty premise that Defendants paid Plaintiff in full and at a rate exceeding the relevant minimum wages. While Plaintiff concedes that this is true for his federal minimum wage claim, Plaintiff alleges and the record is clear that Defendants paid Plaintiff less than the New York statutory minimum wage by claiming an invalid tip credit. Further, as discussed below, *see infra* Sections II.A.-B., Defendants improperly retained tips from Plaintiff. Accordingly, Plaintiff has not been paid in full, has suffered a concrete injury, and is entitled to payment of his New York statutory minimum wage without taking into account the invalid tip credit or any tips received. *See, e.g.*, *Gamero,* 272 F. Supp. 3d at 408; *Mangahas*, 754 F. Supp. 3d at 495; *Chung*, 246 F. Supp. 2d at 229.

Defendants' argument that they are entitled to summary judgment dismissing Plaintiff's overtime claim similarly lacks merit. As with the minimum wage claims, Defendants argue that since it is undisputed that Plaintiff was fully compensated pursuant to NYLL's tipped overtime rate, summary judgment for Defendants on the overtime claim is proper. Defs. Mem. 6-7; Defs. Opp'n 7-8. However, Defendants again ignore the fact that because they did not provide the required notice, they were not entitled to claim a tip credit on Plaintiff's overtime wages and thus did not pay Plaintiff the full wages he is owed. *See Garcia*, 2024 WL 1311897, at *9. For the

---

[11] Under NYLL § 198(1-d), failure to provide wage statements pursuant to NYLL § 195(3) entitles an employee to statutory damages of $250 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000. NYLL § 198(1-d). While Plaintiff moves separately for summary judgment on his claim under NYLL § 195(3), that claim fails for lack of standing. *See infra* Section III.

same reason, Defendants' standing argument concerning lack of tip credit notice under the FLSA, Defs. Opp'n at 12-13, is unavailing and Defendants' motion for summary judgment is denied.

## II.    Unlawful Tip Retention

Both the FLSA and NYLL contain provisions barring employers from withholding from employees tips that they earn. *See Mangahas*, 754 F. Supp. 3d at 501. Specifically, § 203(m)(2)(B) of the FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B); *see also Van Duser v. Tozzer Ltd.*, No. 23-cv-9329 (AS), 2024 WL 4635495, at *1 (S.D.N.Y. Oct. 31, 2024) (explaining that in 2018 Congress created a cause of action for unlawful tip retention under the FLSA). "New York law similarly prohibits employers from requiring tipped employees to share tips with non-service employees or managers." *Shahriar*, 659 F.3d at 240. Under NYLL § 196–d, "[n]o employer or his agent . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196–d. Thus, "[b]y its plain terms, § 196–d bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service." *Shahriar*, 659 F.3d at 240.

Plaintiff seeks summary judgment on two separate tip retention claims: (1) that Defendants charged a 15% service fee for Aroy Dee Thai catering orders completed by its delivery workers, which Plaintiff contends was improperly shared with both tipped and non-tipped employees in violation of NYLL § 196–d; and (2) that employment records produced by Defendants demonstrate that Plaintiff was not paid for all the tips that those same documents record him as having earned. Pl. Mem. at 11-14.

16

**A. Improper Tip Sharing of "Service Fee" for Catering Orders**

Plaintiff argues the 15% service fee for catering orders carried out by the delivery workers at Aroy Dee Thai, which were concededly split amongst tipped and non-tipped workers, *see* Pl. 56.1 ¶ 64, were actually gratuities under NYLL § 196–d and could not be shared with non-tipped employees. Pl. Mem. at 11-13.[12]

In support, Plaintiff cites to the deposition testimony of K. Makmuang in which she testified that, for catering orders, customers were informed over the phone of the 15% "service fee." *See* Pl. 56.1 at ¶ 64; *see also* K. Makmuang Dep. 34:17-36:2 ("Q. So – I'm sorry, so what's the 15 percent service charge that you're saying you charge? A. When customer – its only Aroy Dee Thai. When customer call in to do catering, then we inform customer that is the service fee."). Neither Plaintiff nor Defendants point to any other evidence concerning the nature of this fee or how it was communicated to customers.

Under New York law "[a] mandatory service charge may constitute a 'charge purported to be a gratuity' within the meaning of NYLL § 196–d 'when it is shown that employers represented or allowed their customers to believe that the charge [ ] [was] in fact [a] gratuit[y] for their employees.'" *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 469 (S.D.N.Y. 2015) (alterations in original) (quoting *Samiento v. World Yacht Inc.*, 10 N.Y. 3d 70, 89, 883 N.E.2d 990, 996 (2008)); *see also Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 389 (S.D.N.Y. 2013) ("The case law in New York has construed § 196–d to require a holistic assessment of how a reasonable customer would understand, in context, a particular surcharge, and whether it is purported to be a gratuity.") (quotation omitted).

---

[12] Plaintiff rests his case entirely on the NYLL and makes no argument that these fees should be construed as gratuities under the FLSA. *Id.*

Critically, regulations promulgated by the New York State Department of Labor ("NYSDOL") under the NYLL create a "rebuttable presumption" that any charge made in addition to charges for food, beverage and specified other materials or services "is a charge purported to be a gratuity." N.Y.C.R.R. § 146–2.18. Further, for such a charge to *not* be considered a gratuity, the charge "shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip." N.Y.C.R.R. § 146–2.19(a). Moreover, "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity" and the relevant regulation states that "[a]dequate notification shall include a statement in the contract or agreement with the customer, and on any menu or bill listing prices, that the administrative charge . . . is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service." N.Y.C.R.R. § 146–2.19(b)-(c); *see also Maldonado*, 990 F. Supp. 2d at 393-94. While not binding, NYSDOL's regulations interpreting NYLL § 196-d are entitled to deference. *Samiento*, 10 N.Y.3d at 88.

It is undisputed that 5% of the mandatory service fee charged for catering orders completed by the delivery workers at Aroy Dee Thai was shared with non-tipped staff. *See* Defs. Rp. ¶ 64. The only record evidence cited by the parties concerning this charge comes from K. Makmuang who testified that customers were informed over the phone of the 15% "service fee." *See* Pl. Mem. at 12; K. Makmuang Dep. 33:9-36:2. In arguing that this charge should not be construed as a gratuity, Defendants argue that the fee's status as a gratuity is a "fact-intensive inquiry" and that a reasonable customer hearing "service charge" for catering orders would not assume it is a gratuity. Defs. Rp. ¶ 65; Defs. Opp'n at 13.

The undisputed record on this issue is admittedly thin for both parties.  However, Defendant has come forward with evidence to rebut the presumption that the service charge is a gratuity and raised a genuine issue of material fact given that the issue of a reasonable customer's expectation is a "fact-intensive" inquiry that is dependent on the "totality of all of the circumstances, including all of the statements made or not made by the employer." *Martin v. Restaurant Assocs. Events Corp.*, 937 N.Y.S. 2d 556, 566, 35 Misc. 3d 215, 225 (N.Y. Sup. Ct. 2012), *aff'd*, 106 A.D.3d 785 (N.Y. App. Div. 2013).  A reasonable objective customer could perceive the 15% service fee is either a gratuity or not.  Therefore, this issue is not properly resolved on summary judgment, but rather is for a jury to decide.  Accordingly, Plaintiff is not entitled to summary judgment on his claim that the fee structure for catering orders constitutes unlawful tip retention and violated NYLL § 196–d.

Further buttressing this conclusion is the fact that it is not immediately clear based on the record that Plaintiff actually completed any catering orders.   Rather, Plaintiff only claimed in his Rule 56.1 Statement that "Aroy Dee Thai used the delivery people that it employed to complete [] catering orders," without explicitly stating that Plaintiff completed any such orders.  *See* Defs. Rp. ¶ 64.  While Defendant does not move for summary judgment on this basis, there are clearly disputed issues of fact concerning this claim.  *See* Defs. Rp. ¶ 64

In so holding, the Court rejects Plaintiff's conclusory argument unsupported by citation to relevant caselaw that an employer must notify customers in writing that a mandatory service charge is not a gratuity. Pl. Mem. at 12-13.  There are few cases addressing this issue, and while Plaintiff's reading of the relevant regulations is not implausible, the better reading based on New York case law is that the regulations imply a safe harbor for employers should they provide notification in writing.   N.Y.C.R.R. § 146–2.19(a) (noting customers must be notified that an administrative

19

charge is not a gratuity); *Id.* § 146–2.19(c) (specifying that "adequate notification shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices, that the administrative charge [] is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests"). Indeed, the New York Appellate Division has explicitly referred to the N.Y.C.R.R. § 146–2.19(c) as reflecting a "regulatory safe harbor provision." *Button v. Metro. Club, Inc.*, 187 A.D.3d 630, 630 (N.Y. App. Div. 2020). Further, in *Maldonado*, the court found that there were "colorable" arguments for either reading concerning whether written notification is mandated by N.Y.C.R.R. § 146–2.19(c) or is a "safe harbor" but ultimately declined to resolve the issue on summary judgment. *Maldonado*, 990 F. Supp. 2d at 394.

## B. Improper Tip Retention of Documented Tips Received

Plaintiff separately argues that the employment records produced by Defendants demonstrate that he was not paid all tips that the Defendants' employment records show Plaintiff as having earned. Pl. Mem. at 13-14. It is undisputed that only a portion of the tips that Defendants' employment records document Plaintiff as having received were included on his payroll checks. Defs. Rp. 56.1 ¶ 60. For example, for the week ending July 25, 2021, Defendants' records reflect Plaintiff as having earned $345.02 in total tips but he was only paid $108.57 in tips. *See* Pl. 56.1, Ex. 8, Pl. Employment Records at 1-2. And for the week ending October 31, 2021, it is recorded that Plaintiff earned $466.05 in total tips but was only actually paid $131.19 in tips. Pl. 56.1, Ex. 8, Pl. Employment Records at 29-30. Further, it is undisputed that the remaining portion of tips was supposed to be provided by separate check outside of the payroll checks. Pl. 56.1 ¶ 60. Defendants have not produced any of the non-payroll checks to demonstrate full payment to Plaintiff of these tips that the employment records document Plaintiff as having earned.

20

*Id.* ¶ 61.  Plaintiff asserts that this practice of failure to remit all gratuities to Plaintiff persisted throughout his employment.  Pl. Mem. at 13-14.

Defendants point to no evidence to contest this claim and concede they have not produced any of these non-payroll checks to show payment of all tips owed to Plaintiff.  Defs. Rp. ¶ 61.  Rather, Defendants sole rebuttal to this claim is that Plaintiff "signed weekly pay receipts and verified their accuracy in his deposition" which, according to them, indicates that Plaintiff believed his compensation was proper at the time.  Defs. Opp'n at 13-14*; see also* Defs. Rp. ¶ 61 (disputing "implication of non-payment, as Plaintiff's signed receipts [] and total compensation exceeding minimums [] indicate full payment").  Defendants cite no authority to support its suggestion that Plaintiff's signature on his payroll receipts negates his claim to be compensated for the balance of his earned tips.  This is especially the case where, as here, it is undisputed that all parties operated under the notion that the portion of tips not included on his payroll checks, would be paid by separate check. *See* Defs. Rp. ¶ 60.  Accordingly, on this basis, Plaintiff's motion for summary judgment on his claim that tips were improperly retained is granted.

## III.    Wage Theft Prevention Act Claims

Plaintiff and Defendants both move for summary judgment on Plaintiff's claims under the WTPA, which amended the NYLL effective on April 9, 2011.  2010 N.Y. Sess. Laws 1446-58; *see also Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024).  Here, Plaintiff argues that Defendants violated the WTPA by failing to provide wage notices and wage statements, or provided deficient notices and statements, in violation of NYLL §§ 195(1) and (3), which were adopted as part of the WTPA. *Guthrie*, 113 F.4th at 303.

As for wage-notices, the WTPA requires that an employer, at the time of hiring, to provide employees "with a notice (1) describing the employee's rate of pay for regular and for overtime

hours; (2) stating whether the employer intends to credit allowances for items such as tips, meals, and lodging toward the employee's minimum wage; (3) describing certain health care benefits; and (4) providing other basic information." *Guthrie*, 113 F.4th at 303 (citing NYYL § 195(1)(a)). Further, pursuant to the WTPA, employers must provide regular wage statements each time wages are paid "detailing the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances." *Id.* (citing NYLL § 195(3)). An employer who does not receive such notices or wage statements is entitled to certain statutory damages. *See* NYLL § 198(1-b) (detailing recovery for violations of NYYL § 195(1)); NYLL § 198(1-d) (detailing recovery for violations of NYYL § 195(3).

Plaintiff claims it is undisputed that Defendants never provided Plaintiff with any wage notice and failed to provide valid wage statements. Pl. Mem. at 14-18. Defendant concedes that it did not provide Plaintiff with any wage notices. Defs. Rp. ¶ 55. As for wage statements, while Defendants appear to dispute that they did not provide Plaintiff with valid wage statements, they state that "no harm resulted from any lack of itemization[.]" Defs. Rp. ¶ 57. A review of all of Plaintiff's employment records produced by Defendants demonstrate that Defendants have not provided Plaintiff with a wage statement that contained all the information required under NYLL § 195(3), including, but not limited to, the amount of tip credit claimed. *See* Pl. 56.1, Ex. 8, Pl. Employment Records; *see also Feng v. Kelai Corp.*, 727 F. Supp. 3d 423, 451 (S.D.N.Y. 2024) ("The regulatory provision accompanying the wage notice and statement requirements clarifies that '[t]he employer has the burden of proving compliance.'") (quoting 12 N.Y.C.R.R. § 146-2.2(d)).

Defendants principally argue that Plaintiff lacks standing to pursue his WTPA claims even if Defendants technically violated NYLL §§ 195(1) and (3). Defs. Mem. at 8-11.[13] Under Article III of the U.S. Constitution this court only has jurisdiction over cases and controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). Standing to sue is "rooted in the traditional understanding of a case or controversy." *Id.* To establish Article III standing, Plaintiff bears the burden of establishing that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 338. Critical for this case, the Supreme Court has explained that "a bare procedural violation, divorced from any concrete harm" cannot satisfy the injury-in-fact requirement. *Id.* at 341; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 ("No concrete harm, no standing.").

The Second Circuit, applied in this context in *Guthrie*, clarified that "a plaintiff must adequately allege a concrete injury-in-fact resulting from the failure to provide the wage notices and wage statements to maintain a claim for statutory damages under New York Labor Law § 195." 113 F.4th at 302-03. Specifically, a plaintiff "must show some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308. "That is 'unless the plaintiff-employee can show that he or she would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195.'" *Giancotti v. Pizzarotti LLC*, No. 23 Civ. 3457 (JPC), 2025 WL

---

[13] Defendants also argue that Plaintiff's NYLL § 195 claims are barred pursuant to NYLL § 198(1-d)'s affirmative defense in that Defendants paid all wages due to Plaintiff. Defs. Mem. at 7-8. However, as discussed above, Defendants have not paid all wages owed to Plaintiff and cannot rely on this affirmative defense, which, in any event, only applies with respect to an employer's failure to comply with NYLL § 195(3). *See* NYLL § 198(1-d) ("In any action [] to recover damages for violation of [NYLL § 195(3)], it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due . . . .").

2607606, at *18 (S.D.N.Y. Sept. 9, 2025) (quoting *Guthrie*, 113 F.4th at 308). In other words, while "a plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion" a plaintiff "cannot 'assume this conclusion without analysis' or rely on 'speculation and conjecture.'" *Guthrie*, 113 F.4th at 309 (italics in original) (quoting *Quieju v. La Jugueria Inc.*, No. 23 Civ. 264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).

Here, Plaintiff fails to meet his burden to demonstrate a causal connection between the lack of proper wage notices and statements and any downstream harm he claims to have suffered. In his Reply and in his opposition to Defendants' motion for summary judgment, Plaintiff merely asserts in conclusory fashion, without any citation to the record, that "Defendants' failure to provide accurate wage statements or any wage notice allowed Defendants to hide their wrongdoing from Plaintiff" which resulted in Defendants paying "Plaintiff beneath the minimum wage" and "illegally retain[ing] tips earned by Plaintiff." Pl. Reply at 8; Pl. Opp'n at 23-24. However, Plaintiff submits no affidavit and points to no evidence to demonstrate that Defendants' failure to provide compliant wage notices and wage statements led to concrete harm in the form of lost wages or otherwise. *See Rosario v. Prasad Cosmetic Surgery*, No. 21-cv-02944 (NCM) (AYS), 2025 WL 486636, at *4 (E.D.N.Y. Feb. 13, 2025) (granting defendants summary judgment on Plaintiff's NYLL § 195 claims where "plaintiff provides no affidavits or testimony to support a causal connection between the lack of wage notice or statements and her injury" and the record did not support such a finding either); *see also Charles v. Pinnacle Too, LLC*, No. 22-CV-4232 (DEH) (JW), 2024 WL 4491560, at *15 (S.D.N.Y. Oct. 15, 2024) ("To survive summary judgment, potential plaintiffs would likely need to submit sufficient affidavits or provide credible testimony

24

that the failure to provide wage statements and wage notices caused downstream harm because the lack of such statements led to lost wages."). Nor does the record support such a conclusion. Thus, Plaintiff's conclusory assertions, without citation to any specific facts, cannot meet his burden to establish Article III standing. *See Giancotti*, 2025 WL 2607606, at *18 (finding no concrete injury-in-fact for Section 195 claims where Plaintiff made conclusory assertions that the failure to provide notices and wage statements "delayed the full and timely payment of the wages he was entitled to" and "impaired" his prompt seeking of relief). Accordingly, Plaintiff's motion for summary judgment on these claims is denied and the claims are dismissed without prejudice for lack of standing. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 121 (2d Cir. 2017) (explaining that "where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*") (italics in original).

## IV.    Liquidated Damages

Plaintiff seeks a ruling that he is entitled as a matter of law to liquidated damages under either the FLSA or NYLL on the ground that Defendants did not act in subjective good faith or have objectively reasonable grounds to believe they were complying with the FLSA and NYLL. Pl. Mem. at 18-20.

Where a Plaintiff prevails on a claim under the FLSA, he can recover not only his actual damages, but also *may* recover liquidated damages in the same amount. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (noting double damages are the norm and single damages the exception). A court has discretion to deny liquidated damages where the employer, bearing the "heavy burden" of proof, demonstrates that "it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Id.* at 150-51. To establish requisite good faith, an employer "must show that it took

25

active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* at 150 (citation omitted).

Under the NYLL a successful plaintiff is entitled to actual damages and "liquidated damages in an amount equal to actual damages are similarly presumed unless the employer proves good faith." *Mangahas*, 754 F. Supp. 3d at 507-08. The same good faith standard under the FLSA is generally applied with respect to a claim for liquidated damages under the NYLL. *Id.* at 508; *see also Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences[.]").[14]

Here, the record is not undisputed on this fact intensive issue. Indeed, Defendants have raised a triable issue of fact, sufficient to defeat summary judgment, with respect to whether they acted in good faith. Plaintiff argues that P. Makmuang, the 100% owner of Aroy Dee Thai, took no steps to ensure that employees were paid in accordance with laws and regulations. Pl. Mem. at 19-20; P. Makmuang Dep. 19:18-21 ("Q. What have you done to ensure that employees are accurately paid in accordance with laws and regulations? A. I did not do any of that."). While P. Makmuang delegated control of payroll, accounting and bookkeeping for Aroy Dee Thai to K. Makmuang, Pl. 56.1 ¶¶ 13, 42, Plaintiff asserts K. Makmuang was ignorant of tip credit requirements. Pl. Mem. at 20 (citing K. Makmuang Dep. 31:12-33:9).

However, the cited deposition testimony does not demonstrate ignorance on the part of K. Makmuang. Rather, K. Makmuang testified that she *did* know the requirements for a restaurant to claim a tip credit but explained that the law changes all the time and was, in turn, unable to state on the record at her deposition the exact requirements when asked by Plaintiff's counsel. *See* K.

---

[14] Of course, Plaintiff may not cumulatively recover liquidated damages under both the FLSA and NYLL. *See Inclan*, 95 F. Supp. 3d at 505-06.

Makmuang Dep. 31:20-33:9.  That K. Makmuang was unable to regurgitate the requirements under the FLSA and NYLL to claim a tip credit off the top of her head at a deposition does not demonstrate, as a matter of law, that Defendants took no action to ascertain the dictates of the FLSA and NYLL.  To the contrary, K. Makmuang affirmatively testified that she was aware of the requirements with respect to taking a tip credit.  K. Makmuang Dep. 31:24-32:1 ("Q. Do you know what the requirements are for a restaurant to claim a tip credit? A. Yeah.").

As evidence of their good faith, Defendants point, *inter alia*, to evidence that they informed customers that the 15% charge on catering orders was a "service charge," and even required employees to review and sign their pay stubs each week to confirm they are accurate.  Defs. Opp'n at 15.[15]  Viewed in the light most favorable to Defendants, as the non-moving party, the record raises genuine issues of material fact concerning Defendants' good faith.  Accordingly, Plaintiff is not entitled to summary judgment as to his claim for liquidated damages.  *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 937-38 (S.D.N.Y. 2013) (denying summary judgment despite doubts that Defendants could ultimately prove good faith because "viewing the evidence in the light most favorable to the defense, the Court cannot rule out that such a showing could be made"); *see also Calderon v. Mullarkey Realty, LLC*, No. 14-CV-2616 (PKC)(RLM), 2018 WL 2871834, at *16 (E.D.N.Y June 10, 2018).

## V.      FLSA's Three Year Statute of Limitations for "Willful" Violations

Plaintiff next moves for summary judgment on its claim that Defendants' FLSA violations were willful such that he is entitled to an extended three-year statute of limitations.  Pl. Mem. at 20-21.  As an initial matter, this argument appears entirely gratuitous since Plaintiff's claim is not

---

[15] Defendants also argue that good faith is shown because they paid Plaintiff "well above statutory minimums," and "meticulously tracked and paid overtime correctly[.]"  Defs. Opp'n at 15.  These arguments are unavailing given that Defendants paid Plaintiff below the applicable state statutory minimum wage pursuant to an invalid tip credit and failed to pay overtime correctly given the invalid tip credit.  *See supra* Section I.A.-C.

time barred under the normal two-year statute of limitations. Plaintiff was employed by Defendants from July 2021 to June 2022, Pl. Rp. ¶ 22, and filed suit in January of 2023, [ECF No. 1], within the two-year limitations period. Therefore, there is a serious question whether there is a live case or controversy that would permit adjudication of this issue.

In any event, Plaintiff is not entitled to summary judgment on this issue. While the general statute of limitations under the FLSA is two years, the period is extended to three years if the underlying violations are "willful." 29 U.S.C. § 255(a); *see also Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). To demonstrate a willful violation, the burden rests on the employee to show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the" FLSA. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 322 (2d Cir. 2021) (citation omitted). Further, "willful conduct does not encompass conduct that is merely negligent or unreasonable." *Inclan*, 95 F. Supp. 3d at 503 (citation and alterations omitted). However, "[b]ecause of the difficulty in discerning, as a matter of law, whether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless," courts generally leave the issue to the trier of fact. *Id*.

In seeking to extend the statute of limitations, Plaintiff relies on the same evidence cited in support of his argument concerning liquidated damages and argues that willfulness is established because Defendants were "knowingly ignorant about" tip credit requirements. Pl. Mem. at 21. Thus, for much the same reasons that this argument failed with respect to liquidated damages, Plaintiff's motion for summary judgment as to the extended limitations period for willful violations also fails.

Indeed, the facts here are a far cry from *D'Arpa v. Runway Towing Corp.*, No. 12–CV–1120, 2013 WL 3010810, at *4 (E.D.N.Y. June 18, 2023), the sole case upon which Plaintiff relies.

28

Pl. Mem. at 21.  In *D'Arpa*, the court found defendants' conduct willful where defendants paid nearly all plaintiffs "in cash in a sealed envelope, which did not include a paystub or statement of wages"; "kept no signed receipts of these cash payments," and did not issue W-2s to those employees they paid in cash.  2013 WL 3010810, at *4.  The facts here are not analogous.

In short, Plaintiff has failed to meet the "high" standard for proving willfulness as the evidence is not conclusive and a trier of fact could reasonably find that Defendants' actions were merely negligent or unreasonable but not willful.  *Hart,* 967 F. Supp. 2d at 937 (declining to grant plaintiff summary judgment as to willfulness despite the fact that "plaintiffs recite evidence based on which a trier of fact could find willfulness[,] [a]nd in opposition, defendants do little more than recite the high standards for a finding of willfulness or lack of good faith"); *see also Inclan*, 95 F. Supp. 3d at 503 ("We see no reason in this case to depart from the general reluctance of courts to resolve the question of willfulness on a motion for summary judgment.").  Accordingly, Plaintiff's motion for summary judgment seeking application of a three-year statute of limitations for FLSA claims based on a finding of "willfulness" is denied.

## VI.    Joint and Several Liability

Finally, Plaintiff seeks summary judgment that Defendants Huadwattana, K. Makmuang, and P. Makmuang are jointly and severally liable as employers under the FLSA and NYLL and that Aroy Dee Thai was Plaintiff's employer under the FLSA.  Pl. Mem. at 21-25.  Defendants oppose only with respect to Huadwattana and P. Makmuang.  Defs. Opp'n at 16.  Since Defendants do not dispute that Aroy Dee Thai and K. Makmuang were Plaintiff's employers under both the FLSA and NYLL, summary judgment is granted to Plaintiff with respect to those Defendants and the Court holds that where liability is established, Defendants Aroy Dee Thai and

K. Makmuang are jointly and severally liable as employers.  *See Mangahas*, 754 F. Supp. 3d at 492.

Defendants argue that Plaintiff has not met his burden with respect to Huadwattana and K. Makmuang.  FLSA liability extends only to "employers," which the FLSA defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d); *Tecocoatzi-Ortiz*, 2022 WL 596831, at *4.  The term "person" may be an "individual" or "any organized group of persons," including corporations. 29 U.S.C. § 203(a).

Whether a defendant is an employer under the FLSA is "grounded in economic reality rather than technical concepts."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). Specifically, the Second Circuit has prescribed a four-factor test to determine whether an individual or entity is an employer under the FLSA.  *See Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).  The *Carter* factors instruct that the inquiry turns on:  "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter*, 735 F.2d at 12 (citation omitted).

The four-factor test is intentionally "nonexclusive and overlapping" in order to ensure the economic reality test is sufficiently comprehensive and flexible in line with the broad language of the FLSA.  *Irizarry*, 722 F.3d at 105.  The Second Circuit has clarified that "to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment[,]" and that "[a] person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  *Id.* at 109-10 (alterations added).  The Second Circuit has explained that while an "employer" need not be responsible for managing

30

employees or come into direct contact with them, "the relationship between the [purported employer's] operational function and the plaintiffs' employment must be closer in degree than simple but-for causation." *Id.* at 110.  Further, "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an "employer" without some involvement in the company's employment of the employees." *Id.* at 111.

Similar to the FLSA, liability under the NYLL extends only to "employers" and their "agents." N.Y. Lab. Law § 662(1).  While the New York Court of Appeals has not decided whether the employer test under the NYLL is the same as under the FLSA, *Irizarry*, 722 F.3d at 117, courts generally have assumed that the same standard governs.  *Tecocoatzi-Ortiz*, 2022 WL 596831, at *4 (collecting cases); *see also Toxqui*, 2025 WL 2430569, at *4 (applying the same standard under both the NYLL and FLSA).  Here, neither party argues that the analysis is different.

As for Defendant Huadwattana, Plaintiff does not argue he had the power to hire or fire employees at Aroy Dee Thai, where Plaintiff worked.  *See* Pl. Mem. at 22-23.  Rather, Plaintiff argues the first two *Carter* factors are met because Huadwattana purportedly exercised operational control over all three Corporate Defendants, including Aroy Dee Thai.  Pl. Mem. at 22-23.  However, Plaintiff does not point to any evidence or otherwise discuss the extent or nature of this alleged operational control or how it affected Plaintiff.  Indeed, Defendants dispute that Huadwattana exercised control over Plaintiff.  Defs. Rp. ¶¶ 20, 22, 23, 24.  The support for Huadwattana's purported operational control comes solely from a snippet of K. Makmuang's testimony.  *See* K. Makmuang Dep. 22:13-23:21 ("Q. Who's the manager at Aroy Dee Thai? A. It change daily. Q. Okay. It changes daily? A. It's depends. Like it's a head server who report the problem. Q. And the head server will report the problem to Chatchai? A. Yes. Q. Okay. And Chatchai will tell him how to handle it? A. Yes.").  However, in discussing Huadwattana's position

31

with respect to the three Corporate Defendants in this case, Pl. 56.1 ¶¶ 21-26, Plaintiff relies solely on deposition testimony from Huadwattana concerning his authority over the Kuu Ramen restaurants, not Aroy Dee Thai. Indeed, Plaintiff relies on this evidence to assert Huadwattana had the power to hire and fire employees of **all** Corporate Defendants, had functional control over **all** Corporate Defendants, could set pay rates, had access to employee records, and had the power to supervise and control Plaintiff's supervisors, employee work schedules, and conditions of employment. Pl. 56.1 ¶¶ 21-26 (citing Pl. 56.1, Ex. 6 ("Huadwattana Dep.") at 12:2-3, 12:10-21, 13:11-24, 14:9-21, 16:6-23, 17:9-23, 18:10-14, 18:16-25, 26:10-13 [ECF No. 90-6]). While Defendants largely admit these assertions, s*ee* Defs. Rp. ¶¶ 21-26, Plaintiff's relevant statements of material fact nonetheless point merely to *potential* power Huadwattana had, but does not point to any evidence that he ever took any action to exercise his authority in any way. *See Irizarry*, 722 F.3d at 109-11 ("[T]he manifestation of, or, at the least, a clear delineation of an individual's power over employees is an important and telling factor in the 'economic reality' test. Ownership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees."),

Furthermore, Plaintiff claims the third *Carter* factor is satisfied as to Huadwattana because he possessed the authority to set payroll policies at Aroy Dee Thai and delegated that power to K. Makmuang. *See* Pl. Mem. at 23-24. However, none of the cited evidence purports to show Huadwattana's supposed authority over payroll at Aroy Dee Thai or delegating such power to K. Makmuang. *See* K. Makmuang Dep. 29:15-30:2 (K. Makmuang testifying that employees at Kuu Ramen restaurants and Aroy Dee that have questions about pay can contact her (K. Makmuang)). And Plaintiff does not put forth any evidence that the fourth *Carter* factor is satisfied with respect to Huadwattana. Pl. Mem. at 24.

For their part, Defendants dispute that Huadwattana exerted any direct control over Plaintiff. Defs. Opp'n at 16. Rather, they argue that Kelly and Leo directly supervised Plaintiff. *Id.* Moreover, Defendants note that Huadwattana delegated oversight of wage and hour compliance to Arm Susumuk, the manager for Kuu Ramen, *id.* (citing Pl. 56.1 ¶ 30), and Plaintiff points to no evidence that Arm Susumuk exerted any control over Aroy Dee Thai and its employees.

Based on this thin record and the fact that there exist genuine disputes of material fact as to the level of control and supervision, if any, that Huadwattana exerted over Plaintiff specifically, or even employees generally at Aroy Dee Thai, the Court finds summary judgment is not warranted for Plaintiff with respect to Huadwattana's status as an employer. *See Mangahas*, 754 F. Supp. 3d at 494 (denying summary judgment because "Plaintiffs' and Defendants' warring accounts of [the individual defendant's] role and authority demonstrate that there is a genuine issue of material fact."); *Mendez v. Pizza on Stone, LLC*, 2012 WL 3133522, No. 11 Civ. 6316 (DLC), at *2 (S.D.N.Y. Aug. 1, 2012) (denying summary judgment where disputed facts included whether the individuals "have the power to hire and fire employees, [] exercise control over work schedules and employment conditions, determine rates and methods of payment, and maintain [] employment records").

As for Defendant P. Makmuang, it is undisputed that as the 100% owner of Aroy Dee Thai she (1) had the power to hire and fire Aroy Dee Thai employees, Defs. Rp. ¶ 37; (2) had the power to make decisions regarding employee pay at Aroy Dee Thai, Defs. Rp. ¶ 40; (3) had access to employee records, Defs. Rp. ¶ 41; and (4) delegated payroll, recordkeeping, and bookkeeping for Aroy Dee Thai to K. Makmuang. Defs. Rp. ¶¶ 13, 39, 42. While P. Makmuang obviously held this *potential* power as the 100% owner of Aroy Dee Thai, Plaintiff again fails to come forward with

33

any evidence that she ever wielded it—*i.e.*, she exercised operational control in a way that "directly affect[ed] the nature or conditions of the [Plaintiff's] employment." *Irizarry*, 722 F.3d at 110. Without any evidence on this front, Plaintiff appears to rely largely on P. Makmuang's mere "ownership" which the Second Circuit has held is "insufficient to demonstrate 'employer' status." *Id.* at 109. This is especially true, given Defendants' evidence that Kelly and Leo supervised Plaintiff. Defs. Opp'n at 16.

Thus, based on the record before the Court on Plaintiff's motion, disputes of material fact remain and the Court finds that Plaintiff is not entitled to summary judgment with respect to P. Makmuang's status as an employer.[16]

## VII.    Plaintiff's Claim for a Violation of 26 U.S.C. § 7434

Plaintiff has asserted a claim that Defendants violated the U.S. tax code by filing fraudulent information returns in violation of 26 U.S.C. § 7434.

Specifically, in his Second Amended Complaint, Plaintiff alleges that Defendants "failed to provide Plaintiff [] with accurate Forms W-2 for all the tax years of [his] employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff" and as such filed fraudulent information in violation of Section 7434(a). Second Am. Compl. ¶ 82. Defendants move for summary judgment dismissing this claim. Defs. Mem. at 14-17.

Section 7434(a) provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). "The

---

[16] The Court reiterates that Plaintiff has not moved for judgment with respect to Corporate Defendants Dee Jing Inc. d/b/a Kuu Ramen and Limupoke Inc., d/b/a Kuu Ramen, which are two restaurants at which Plaintiff was not employed, or individual Defendant Penkae Poolsuk.

term 'information return' is defined by the statute to include W-2 forms. *Toxqui*, 2025 WL 2430569, at *14 (citing 26 U.S.C. § 6724(d)(1)).

To succeed on a Section 7434 claim, Plaintiff must come forward with *evidence* to show that the defendant "willfully file[d] a fraudulent information return." *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011); *see also Grande v. 48 Rockefeller Corp.*, No. 21-CV-1593 (PGG) (JLC), 2023 WL 5162418, at *12 (S.D.N.Y. Aug. 11, 2023) (explaining that to state a claim under § 743, a plaintiff must allege that "(1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return."  (quoting *Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV) (JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022)).  However, the Second Circuit has made clear that failure to file an information return cannot support a claim under Section 7434. *Katzman*, 660 F.3d at 568 ("willfully files" "plainly does not encompass an alleged *failure* to file a required information return").

In seeking summary judgment, Defendants argue Plaintiff's claim fails for a lack of evidence as he has not produced any W-2s and comes forward with no evidence concerning "what returns were filed" let alone how they were fraudulent.  Defs. Mem. at 16.  In response, Plaintiff does not refute the evidentiary void, but speculates that Defendants' filings with the IRS "would undoubtedly reflect income and payments made to Plaintiff as recorded on his wage statements." Pl. Opp'n at 24.   In turn, he argues that since it is undisputed that Defendants did not include (or distribute) all tips earned by Plaintiff on his wage statements, "they could not have accurately reported this information on their IRS filings."  Pl. Opp'n at 24-25.  Further, Plaintiff seeks to shift its burden onto Defendants by claiming that Defendants "have not provided any evidence demonstrating that Defendants properly accounted for all of Plaintiff's wages on their IRS filings

35

or that they did not willfully file fraudulent information with the IRS." *Id.*   Plaintiff, who has the burden of proof with respect to his claim, does not come forward with any evidence concerning IRS filings—whether Defendants filed one on his behalf and whether the return was false as to the amount paid to Plaintiff. *See Grande*, 2023 WL 5162418 at *12.

Because Plaintiff has "provided no information return nor have they pointed to any specific return that was fraudulently filed," or that any inaccurate filing was issued willfully, Plaintiff fails to raise any dispute of material fact with respect to his Section 7434 claim and fails to carry his burden on a *prima facie* case.  As such, Defendants are entitled to summary judgment dismissing the Section 7434 claim. *Grande*, 2023 WL 5162418 at *12.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is granted in part and denied in part, and Defendants' motion for summary judgment is granted in part and denied in part.  Specifically, IT IS HEREBY ORDERED that:

(1) Plaintiff is entitled to summary judgment on his claim for unpaid minimum wages under the NYLL, without a tip credit allowance, and his claim for unpaid overtime wages under the FLSA and NYLL, without a tip credit allowance;

(2) Plaintiff is entitled to summary judgment on his claim that Defendants unlawfully retained Plaintiff's tips under the FLSA and NYLL;

(3) Plaintiff is not entitled to judgment as a matter law with respect to:

- his claim for liquidated damages under the FLSA and NYLL;

- his claim that the three-year statute of limitations applies under the FLSA; or

- his claim that individual Defendants Huadwattana and P. Makmuang are liable as employers under the FLSA and NYLL;

36

(4) Defendants are entitled to summary judgment dismissing Plaintiff's Wage Theft Prevention Act claims; and

(5) Defendants are entitled to summary judgment dismissing Plaintiff's claim under 26 U.S.C. § 7434.

IT IS FURTHER ORDERED that counsel for both parties are directed to appear for a conference in Courtroom 18C of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 1007, on **March 3, 2026 at 2:00 PM** in Courtroom 18C to discuss the resolution of this case by settlement or trial.

The Clerk of Court is respectfully requested to terminate docket entries 84 and 87.

**SO ORDERED.**

**Dated: February 23, 2026**
**New York, New York**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

37